IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CR-83-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANTHONY MORRIS MCFARLANE, | ) | |
| | ) | |
| Defendant. | ) | |

On July 15, 2020, a grand jury in the Eastern District of North Carolina issued a second superseding indictment and charged Anthony Morris McFarlane ("McFarlane" or "defendant") with violating 18 U.S.C. §§ 1015(c), 1425(b), 1542, and 1546(a) [D.E. 32]. On September 3, 2020, McFarlane moved to dismiss the eleven counts in the second superseding indictment [D.E. 39] and filed exhibits in support [D.E. 40]. On October 6, 2020, the government responded in opposition [D.E. 45].

In 1998 and 1999, McFarlane lied about his criminal history to the Immigration and Naturalization Service ("INS"). In January 1999, without correcting those lies, McFarlane obtained his United States citizenship. In February 1999, McFarlane used his new citizenship to obtain a United States passport. In 2009, McFarlane renewed his 1999 passport and submitted his 1999 passport as part of the renewal process. In 2019, McFarlane needed to renew his 2009 passport. In this case, the United States seeks to criminally prosecute McFarlane for allegedly making false statements in 2018, 2019, and 2020 concerning the renewal of his 2009 passport. The government theorizes that McFarlane's 1998 and 1999 false statements infected his 1999 United States citizenship, his 1999 passport, and his 2009 passport, and thereby made various statements in 2018,

2019, and 2020 to be false or fraudulent. As explained below, the criminal statutes on which the government relies do not allow the government to use McFarlane's 1998 false statement and 1999 false statement to prosecute McFarlane for his conduct in 2018, 2019, and 2020. Thus, the court grants McFarlane's motion to dismiss and dismisses the eleven charges in the second superseding indictment.

I.

On May 14, 1996, McFarlane was not a citizen of the United States and applied for naturalization. See [D.E. 45] 1. Question 15-b of the application asked, "Have you ever . . . been arrested . . . for breaking or violating any law or ordinance excluding traffic regulations?" [D.E. 32] 1 (quotation omitted). McFarlane answered "no" to question 15-b and signed the application under penalty of perjury, certifying that his answers were true and correct. See [D.E. 45] 1.

On June 23, 1998, while McFarlane's application for naturalization was pending, authorities in Syracuse, New York, arrested McFarlane and charged him with first-degree sexual abuse, alleging sexual contact with a child less than 11 years old. See [D.E. 32] 1–2. On July 20, 1998, McFarlane appeared before an INS officer in Buffalo, New York, for a naturalization interview. See id. The officer placed McFarlane under oath and, during the interview, McFarlane amended his response to question 15-b to "yes", referenced a 1994 Florida arrest for armed sexual battery that was dismissed in 1995, but did not disclose his June 23, 1998 arrest (the "1998 false statement"). See id.; [D.E. 45] 2.

On December 3, 1998, a grand jury in Onondaga County, New York, indicted McFarlane for first degree sexual abuse of a child and endangering the welfare of a child. See [D.E. 32] 2.

On January 20, 1999, McFarlane completed a notice of naturalization oath ceremony form. See id. Question 3 of the form asked "AFTER the date you were first interviewed on your

2

Application for Naturalization ... [h]ave you been ... indicted ... for breaking or violating any law or ordinance, including traffic violations?" Id. McFarlane answered "no," signed the form certifying his answers were true and correct (the "1999 false statement"), participated in a naturalization ceremony, and received United States citizenship. See id.; [D.E. 45] 3.

On February 16, 1999, McFarlane applied for a United States passport. See [D.E. 45] 4. As evidence of his United States citizenship, McFarlane presented his 1999 naturalization certificate. See id. On February 26, 1999, the Department of State issued McFarlane a United States passport (the "1999 passport"). See id.

On July 19, 1999, McFarlane pleaded guilty in Onondaga County, New York, to attempted first-degree sexual abuse of a child less than 11 years old. See id.

On March 20, 2009, McFarlane applied to renew his United States passport. See id. at 5. As part of his application, McFarlane submitted his 1999 passport. See id. McFarlane signed a declaration in the application stating that "I declare under penalty of perjury all of the following: . . . I have not knowingly and willfully made false statements or included false documents in support of this application." Id. (quotation omitted). On April 11, 2009, the Department of State renewed McFarlane's passport (the "2009 passport"). See id.

On February 27, 2019, McFarlane again applied to renew his United States passport using Form DS-82, U.S. Passport Renewal Application for Eligible Individuals. See id. As part of the application, McFarlane returned his 2009 passport and signed a declaration in the application stating that "I declare under penalty of perjury all of the following: . . . I have not knowingly and willfully made false statements or included false documents in support of this application." Id. On April 1, 2019, the Department of State advised McFarlane that he was ineligible to renew his passport using Form DS-82 because he had been convicted in 1999 of a sex offense against a minor. See id. & n.4.

3

The Department of State told McFarlane that he should renew his passport using Form DS-11. See id.

On April 8, 2019, McFarlane submitted Form DS-11 to the Department of State. See id. at 6. On Form DS-11, McFarlane stated that he had submitted his 2009 passport in support of his application and signed the Form DS-11 certifying under penalty of perjury that he did not include false documents in support of the application. See id. On April 22, 2019, the Department of State renewed McFarlane's passport (the "2019 passport"). See id.

II.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see United States v. Mathis, 932 F.3d 242, 257 (4th Cir. 2019); United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998). Generally an indictment must "set forth the offense in the words of the statute itself," and the statutory language "must be accompanied with such a statement of the facts . . . [that] will inform the accused of the specific offence . . . with which he is charged." Hamling, 418 U.S. at 117–18 (quotation omitted); see United States v. Blankenship, 846 F.3d 663, 668 (4th Cir. 2017).

A district court may dismiss an indictment for errors or irregularities in the grand jury proceeding where there is actual prejudice to the defendant. See, e.g., United States v. Brewer, 1 F.3d 1430, 1433 (4th Cir. 1993); United States v. Vanderhorst, 2 F. Supp. 3d 792, 796 (D.S.C. 2014). In order to demonstrate such prejudice, a defendant must show that (1) "the irregularity

4

substantially influence[d] the decision to indict," or (2) "there is grave doubt that the decision to indict was free from the substantial influence of such irregularities." Brewer, 1 F.3d at 1433 (alteration and quotation omitted); see Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988). Such an error or irregularity includes "an infirmity of law in the prosecution." United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012) (quotation omitted); see United States v. Odom, 721 F. App'x 254, 255 (4th Cir. 2018) (per curiam) (unpublished); United States v. Snipes, 611 F.3d 855, 866 (11th Cir. 2010). For example, if a defendant demonstrates that the allegations in the indictment, even if true, do not state an offense, then a court must dismiss the alleged offense. See, e.g., United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004); United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983); United States v. Granados-Alvarado, 350 F. Supp. 3d 355, 358 (D. Md. 2018); cf. Russell v. United States, 369 U.S. 749, 768 & n.15 (1962) (a purpose of the specificity requirement in an indictment "is to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction" (quotation omitted)); United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011) ("[The district court's] determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict."); United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002) ("Thus, the indictment must also contain a statement of the essential facts constituting the offense charged." (emphasis and quotation omitted)). However, "a court may not dismiss an indictment . . . on a determination of facts that should [be] developed at trial." Engle, 676 F.3d at 415; see United States v. Treacey, 677 F. App'x 869, 873–74 (4th Cir. 2017) (unpublished).

A.

Counts one, five, and six allege that McFarlane violated 18 U.S.C. § 1542 on October 24, 2018, and February 27, 2019. See [D.E. 32] 1–2, 5–7. Section 1542 makes it a crime for a person

5

to

> willfully and knowingly make[] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or
>
> ... willfully and knowingly use[] or attempt[] to use, or furnish[] to another for use any passport the issue of which was secured in any way by reason of any false statement[.]

18 U.S.C. § 1542. Section 1542's first paragraph prohibits making a false statement to "secure" a passport. Section 1542's second paragraph prohibits using a passport secured by a false statement. See United States v. Mends, 412 F. App'x 370, 372–73 (2d Cir. 2011) (unpublished); United States v. Jean-Baptiste, 166 F.3d 102, 111 (2d Cir. 1999). Section 1542's "securing" paragraph requires the government to prove "(i) the making of a false statement, (ii) with the intent to secure the issuance of a passport." United States v. Salinas, 373 F.3d 161, 165 & n.2 (1st Cir. 2004); see United States v. White, 1 F.3d 13, 16 (D.C. Cir. 1993); United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985); United States v. Washington, 705 F.2d 489, 493 (D.C. Cir. 1983) (per curiam). Section 1542's "securing" paragraph also "requires proof that the accused made a false statement in a passport application." White, 1 F.3d at 16; see Salinas, 373 F.3d at 165; O'Bryant, 775 F.2d at 1535; Washington, 705 F.2d at 493. Section 1542's "use" paragraph criminalizes the use of "any passport the issue of which was secured in any way by reason of any false statement." 18 U.S.C. § 1542. Even though the "securing" and "use" paragraphs are phrased differently, "[t]he crimes denounced are not the securing or the use but . . . the [making of] false statements in the procurement of the passport." Browder v. United States, 312 U.S. 335, 337 (1941) (construing section 1542's identically worded predecessor statute).

Counts one and six charge McFarlane under section 1542's "use" paragraph and allege that

6

McFarlane used his 2009 passport in 2018 and 2019 to secure his 2019 passport by false statement. See [D.E. 32] 1, 6–7. Count five charges McFarlane under section 1542's "securing" paragraph and alleges that McFarlane secured his 2019 passport by false statement when on February 27, 2019, he submitted his 2009 passport as part of his 2019 passport application and declared under penalty of perjury that he had not included a false document in support of his application. See id. at 5–6.

Counts one, five, and six rely on McFarlane's alleged 1998 false statement and 1999 false statement. See id. at 1–2, 5–7. Specifically, the government alleges that McFarlane secured his 2009 passport by false statements because (1) McFarlane submitted his 1999 passport as part of his 2009 passport application; (2) McFarlane secured his 1999 passport by false statements because McFarlane submitted his 1999 naturalization certificate as part of his 1999 passport application; and (3) McFarlane secured his 1999 naturalization certificate by his 1998 false statement and 1999 false statement. See id.

In moving to dismiss counts one, five, and six, McFarlane argues that the indictment fails to plausibly allege that McFarlane made a false statement in 2018 or 2019 as part of his passport application. See [D.E. 39] 6–7. According to McFarlane, he did not violate section 1542's "securing" or "use" paragraphs by submitting his 2009 passport as part of his 2019 passport application. See id. The government responds that McFarlane's 1998 false statement and 1999 false statement allowed him to be naturalized and obtain the 1999 passport. In turn, McFarlane submitted the 1999 passport as part of his application for the 2009 passport and obtained the 2009 passport. In turn, McFarlane submitted the 2009 passport to obtain the 2019 passport and thereby violated 18 U.S.C. § 1542. See [D.E. 45] 7–10.

The court disagrees with the government's argument. McFarlane did not make a false statement under section 1542 in 2018 and 2019 when seeking to obtain his 2019 passport.

7

Moreover, the court rejects the government's argument that either his 1999 passport or 2009 passport was a false document. In 2018 and 2019 McFarlane was a United States citizen entitled to possess a United States passport, and the Department of State issued McFarlane's 1999 passport and 2009 passport. See 22 U.S.C. §§ 211a, 212; Fact Sheet on Passports for Judges and Lawyers, U.S. Dep't of State—Bureau of Consular Affs., https://travel.state.gov/content/travel/en/ passports/legal-matters/family-law.html (last visited July 7, 2021).[1] The only false statements the government cites in counts one and six are the 1998 false statement and 1999 false statement McFarlane made during his naturalization proceedings. McFarlane, however, did not make these statements to secure his 2009 passport or his 2019 passport. Rather, he made them to secure his 1999 naturalization certificate. Thus, the indictment fails to allege prosecutable offenses in counts one and six under section 1542's "use" paragraph, and the court dismisses counts one and six. See, e.g., Coia, 719 F.2d at 1123.

As for count five, the indictment alleges that McFarlane made a false statement in his 2019 passport application by submitting his 2009 passport and declaring under penalty of perjury that he had not submitted any false document in support of his 2019 passport application. McFarlane's 2009 passport, however, was not a false document. McFarlane was and remains a United States citizen entitled to a passport and the Department of State validly issued McFarlane's 2009 passport. Thus, the indictment fails to allege that McFarlane made a false statement in 2019 when he asserted that he had not submitted a false document in support of his 2019 passport application. Accordingly, the

---

[1] Although the government contends that McFarlane's conviction for first-degree sexual abuse of an individual less than 11 years old constitutes an "aggravated felony" that rendered him ineligible for naturalization, see 8 U.S.C. §§ 1101(f)(8), 1427(a); Chan v. Gantner, 464 F.3d 289, 292 (2d Cir. 2006), McFarlane was naturalized in 1999. Moreover, the United States has not revoked McFarlane's citizenship.

indictment fails to allege facts constituting a prosecutable offense under section 1542 in count five, and the court dismisses count five. See, e.g., id.

B.

Counts two, ten, and eleven of the indictment allege that McFarlane violated 18 U.S.C. § 1546(a) in 2018, 2019, and 2020. See [D.E. 32] 2–3, 11–13. Section 1546(a) makes it a crime for a person to

> knowingly . . . use[], attempt[] to use, possess[], obtain[], accept[], or receive[] any . . . visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained[.]

18 U.S.C. § 1546(a) (emphasis added). Section 1546(a) "requires proof of (1) a knowingly false representation (2) which is material (3) and under oath or penalty of perjury (4) in an application, affidavit, or other document required by the immigration laws or regulations." United States v. Ortega, No. CR–10–2444–TUC–DCB–DTF, 2011 WL 3267896, at *3 (D. Ariz. June 3, 2011) (unpublished), report and recommendation adopted, 2011 WL 3267377 (D. Ariz. July 29, 2011) (unpublished), aff'd, 519 F. App'x 445 (9th Cir. 2013) (unpublished); see 18 U.S.C. § 1546(a). Section 1546(a) applies only to false statements or fraud associated with the application for the document which is the object of the offense. See United States v. Chu, 5 F.3d 1244, 1247 (9th Cir. 1993); United States v. Khalje, 658 F.2d 90, 92 (2d Cir. 1981) (per curiam); United States v. O'Connor, 158 F. Supp. 2d 697, 720 (E.D. Va. 2001).

Count two charges McFarlane with using or possessing his 2009 passport on or about October 24, 2018. See [D.E. 32] 2–3. According to the indictment, McFarlane obtained his 2009 passport by fraud, "that is, . . . by virtue of his naturalization as a United States citizen [in 1999],"

9

which McFarlane "knew to have been fraudulently procured" through his 1998 false statement and 1999 false statement. Id. Counts ten and eleven charge McFarlane with obtaining and possessing his 2019 passport in 2019 and 2020, by using or possessing his 2009 passport, which he allegedly procured via his 1998 false statement and 1999 false statement. See id. at 11–13.

In moving to dismiss counts two, ten, and eleven, McFarlane argues that he did not make any false statements in 2018, 2019, and 2020, submit his 1999 naturalization certificate in 2018, 2019, or 2020, or present a fraudulent document to procure either his 2009 passport or his 2019 passport. See [D.E. 39] 7–9. The government responds that McFarlane's 1998 and 1999 false statements are conduct sufficient to support the charged offenses under section 1546(a) in counts two, ten and eleven. See [D.E. 45] 10–12.

Although the court agrees that section 1546(a)'s reference to "other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States" includes a passport, the court disagrees with the government's argument about the reach of section 1546(a) in this case. The only false statements or fraud which the indictment identifies in counts two, ten, and eleven are McFarlane's 1998 false statement and 1999 false statement. See [D.E. 32] 2–3, 11–13. The indictment does not allege any false statement or fraud in McFarlane's applications for his 2009 or 2019 passports. Thus, counts two, ten, and eleven fail to allege that McFarlane made false statements or committed fraud under section 1546(a) in 2018 (count two), 2019 (count ten), or 2020 (count eleven). See Chu, 5 F.3d at 1247; Khalje, 658 F.2d at 92; O'Connor, 158 F. Supp. 2d at 720. Accordingly, the court dismisses counts two, ten, and eleven. See, e.g., Coia, 719 F.2d at 1123.

10

## C.

Counts three and seven allege that McFarlane violated 18 U.S.C. § 1015(c) in 2018 and 2019. See [D.E. 32] 3–4, 7–8. Section 1015(c) makes it a crime for a person to

> use[] or attempt[] to use any certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship or other documentary evidence of naturalization or of citizenship, or any duplicate or copy thereof, knowing the same to have been procured by fraud or false evidence or without required appearance or hearing of the applicant in court or otherwise unlawfully obtained[.]

18 U.S.C. § 1015(c). Section 1015(c) "proscribes the use of certain documentary evidence of citizenship knowing it to be false." United States v. Lopez, 704 F.2d 1382, 1385 (5th Cir. 1983). Such documentary evidence of citizenship includes a United States passport. See 22 U.S.C. § 2705(1). Section 1015(c) requires the government to prove that the defendant knew that the documentary evidence of citizenship named in the indictment was procured by fraud or a false statement. See 18 U.S.C. § 1015(c); The William J. Bauer Criminal Jury Instructions of the Seventh Circuit 386 (2020 ed.), http://www.ca7.uscourts.gov/pattern-jury-instructions/pattern_criminal_jury_instructions_2020edition.pdf (last visited July 7, 2021).

Counts three and seven allege that in 2018 and 2019, McFarlane knowingly used documentary evidence of citizenship, namely his 2009 passport, knowing that he procured his 2009 passport by fraud or false evidence. According to counts three and seven, McFarlane obtained his naturalization as a United States citizen through his 1998 false statement and 1999 false statement. See [D.E. 32] 3–4, 7–8. In turn, McFarlane obtained his 1999 passport by fraud. See id. In turn, McFarlane obtained his 2009 passport by fraud. See id.

McFarlane argues that the court should dismiss counts three and seven because they rely on false statements from McFarlane's 1998 and 1999 naturalization proceedings. See [D.E. 39] 9–10. In support, McFarlane contends that his 2009 passport is not documentary evidence of citizenship

11

procured by fraud or false evidence. See id. at 10. The government responds that the indictment plausibly alleges violations of section 1015(c) because McFarlane's 1998 and 1999 false statements made McFarlane ineligible for naturalization; therefore, McFarlane's "naturalization certificate and all subsequent United States passports were procured by fraud, false evidence[,] and unlawfully obtained." [D.E. 45] 12–13.

In counts three and seven, the only false statements or fraud which the indictment identifies are the 1998 and 1999 statements McFarlane made during his naturalization proceedings. See [D.E. 32] 3–4, 7–8. The indictment does not plausibly allege any false statement or fraud in McFarlane's application for the document named in the indictment: his 2009 passport. Cf. 18 U.S.C. § 1015(c); The William J. Bauer Criminal Jury Instructions of the Seventh Circuit 836 (2020 ed.), http://www.ca7.uscourts.gov/pattern-jury-instructions/pattern_criminal_jury_instructions_2020edition.pdf (last visited July 7, 2021). Accordingly, counts three and seven fail to allege facts constituting a prosecutable offense under section 1015(c), and the court dismisses counts three and seven. See, e.g., Coia, 719 F.2d at 1123.

D.

Counts four, eight, and nine allege that McFarlane violated 18 U.S.C. § 1425(b) in 2019. See [D.E. 32] 4–5, 9–10. Section 1425(b) makes it a crime for any person

> not entitled to [do so to] . . . knowingly issue[], procure[] or obtain[] or appl[y] for or otherwise attempt[] to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of nationalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing[.]

18 U.S.C. § 1425(b). Section 1425(b) requires the government to prove three elements: "(1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure [any certificate or evidence of] naturalization or citizenship [documentary or otherwise]; (2) the defendant is not

12

entitled [to documentary evidence of] naturalization or citizenship; and (3) the defendant knows that he or she is not entitled to [documentary evidence of] naturalization or citizenship." United States v. Moses, 94 F.3d 182, 184 (5th Cir. 1996); see United States v. Haiddar, 838 F. App'x 91, 91 (5th Cir. 2021) (per curiam) (unpublished); United States v. Allouche, 703 F. App'x 241, 244–45 (5th Cir. 2017) (per curiam) (unpublished).

Counts four, eight, and nine allege that McFarlane applied for, attempted to procure, and procured and obtained evidence of citizenship for himself to which he was not entitled, namely, McFarlane's 2019 passport. See [D.E. 32] 4–5, 9–10. In support, the indictment alleges that McFarlane is not entitled to his 2019 passport because he unlawfully procured his naturalization certificate with his 1998 false statement and 1999 false statement. See id.

McFarlane responds that the court should dismiss counts four, eight, and nine because McFarlane became a United States citizen in 1999 and was therefore "entitled" to apply for a United States passport in 2019 and did not violate section 1425(b) by applying for the 2019 passport. See [D.E. 39] 10–11. The government replies that McFarlane's 1998 false statement and 1999 false statement rendered him ineligible for naturalization and that McFarlane was not entitled to apply for or be issued a United States passport in 2019. See [D.E. 45] 13–14.

Although the government alleges that McFarlane is not entitled apply for, procure, or obtain a United States passport by virtue of his 1998 false statement and 1999 false statement, McFarlane was a United States citizen in 2019 and was entitled to apply for and possess a United States passport in 2019. See 22 U.S.C. §§ 211a, 212; Fact Sheet on Passports for Judges and Lawyers, U.S. Dep't of State—Bureau of Consular Affs., https://travel.state.gov/content/travel/en/passports/legal-matters/family-law.html (last visited July 7, 2021); cf. Moses, 94 F.3d at 184; Haiddar, 838 F. App'x at 91; Allouche, 703 F. App'x at 244–45. Accordingly, counts four, eight, and nine fail to allege facts

constituting a prosecutable offense under section 1425(b). Thus, the court dismisses counts four, eight, and nine. See, e.g., Coia, 719 F.2d at 1123.[2]

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 39] and DISMISSES the second superseding indictment for failure to allege facts constituting prosecutable offenses. The court DISMISSES as moot defendant's motion to dismiss multiplicitous counts [D.E. 44].

SO ORDERED. This 8 day of July 2021.

JAMES C. DEVER III
United States District Judge

---

[2] In light of the court's conclusions, the court need not reach McFarlane's statute of limitations argument or his multiplicity argument.